975 So.2d 1035 (2007)
Steven Maurice EVANS, Appellant,
v.
STATE of Florida, Appellee.
Steven Maurice Evans, Petitioner,
v.
James R. McDonough, etc., et al., Respondents.
Nos. SC05-161, SC05-1526.
Supreme Court of Florida.
November 15, 2007.
Rehearing Denied February 14, 2008.
*1038 Bill Jennings, Capital Collateral Regional Counsel, and David Dixon Hendry, Assistant CCRC, Middle Region, Tampa, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Steven Maurice Evans appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851. Evans also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the denial of postconviction relief and deny the petition for a writ of habeas corpus.

FACTS AND PROCEDURAL HISTORY
Steven Maurice Evans was tried and convicted in 1999 for the first-degree murder and kidnapping of Kenneth Lewis in 1996. Evans was sentenced to death for his participation in the crimes. The trial was delayed when Evans was found not competent to proceed on two occasions and had to be hospitalized. At the final competency hearing, two experts opined that Evans was competent to be tried. A third expert concluded that he was not competent. After hearing testimony from the three experts, the trial court found Evans competent to stand trial.
Evans, Lewis, and two other individuals, Edward Francis and Gervalow Ward, traveled together from Orlando to Sanford to commit a home invasion robbery on a purported drug dealer. The robbery was called off when Lewis abandoned his companions *1039 and drove off in the getaway car, which was owned by Evans' girlfriend's brother. The other three men went to the nearby home of an acquaintance, Mark Quinn. Evans called his girlfriend Shana Wright and warned her that Lewis might be coming to her apartment. Evans instructed Wright to call the police and report the car stolen, and to remove her money from the apartment. Evans, Francis, Ward, Quinn, and another man named Blaine Stafford went to Wright's apartment and waited for Lewis. When Lewis entered the apartment, the men jumped him, beat him, and bound and gagged him. When the police arrived to investigate the stolen vehicle report, the men took Lewis to a back room of the apartment.
After the police left, Evans fashioned a homemade silencer from a shampoo bottle stuffed with plastic bags and taped it to the barrel of a .22-caliber pistol. Evans instructed Ward to check the backyard for any witnesses. Then Evans, Francis, and Ward walked Lewis to a culvert behind the apartment building. Evans told Lewis that they were the last three people he would leave behind and that they were the last people he would see on earth. Evans then placed the gun to Lewis's head and fired six shots. Five of the shots entered Lewis's head.
Francis was tried and convicted for the same crime and was sentenced to life imprisonment. Francis testified against Evans at the 1999 trial. Ward pled guilty to the lesser charge of kidnapping and received a ten-year negotiated sentence. Ward also testified against Evans at trial. The other individuals involved in the case were not charged with any crimes. Stafford testified at Evans' trial; Quinn did not. Evans was convicted of premeditated first-degree murder. At the penalty phase, Evans presented evidence about his childhood and teenage years as a member of a Jehovah's Witnesses congregation. He also presented evidence of two childhood head injuries, a change in personality after the second injury at age nineteen, and several incidents of "out of control" behavior after he consumed alcohol. At age twenty-two or twenty-three, Evans committed adultery and was disassociated from the Jehovah's Witnesses. Evans was twenty-eight years old at the time of this crime.
The jury recommended a sentence of death by an eleven-to-one vote. At the Spencer[1] hearing, Evans requested that no additional mitigating evidence be presented and asked the court to follow the jury's recommendation and impose a death sentence. The trial court followed the procedure mandated in Koon v. Dugger, 619 So.2d 246, 250 (Fla.1993), and considered all of the mitigating factors, including those proffered pursuant to Koon. The trial court found five aggravating factors: (1) the murder was committed by a person under sentence of imprisonment; (2) Evans had been previously convicted of a felony involving the use or threat of violence; (3) the murder was committed during a kidnapping; (4) the murder was especially heinous, atrocious, or cruel (HAC); and (5) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP). The court gave substantial weight to the statutory mitigator of extreme mental or emotional disturbance and some weight to the statutory mitigator of impaired capacity to appreciate the criminality of his conduct. The court also found five nonstatutory mitigators related to substance abuse (given little weight by the court because there was no evidence that Evans had consumed *1040 a particular amount of alcohol or drugs on the night of the murder) and fifteen related to family, community, and character issues (given little weight because these occurred long before the crimes). Evans asserted a number of other nonstatutory mitigating factors that the court gave no weight.
On appeal, Evans raised three guilt phase issues and five penalty phase issues. Evans claimed that the trial court had erred in finding him competent to stand trial and in denying his motion for a mistrial after a State witness referred to Evans' prior criminal record. He also claimed that the introduction of certain evidence denied him a fair trial. As to the penalty phase, Evans claimed that the trial court erred in finding the CCP and HAC aggravating factors and had improperly balanced the aggravating factors against the mitigating factors. He also claimed that his death sentence was disproportionate and the split jury vote of eleven to one rendered his death sentence unconstitutional. This Court found no error regarding most of Evans' claims. To the extent that irrelevant evidence was improperly admitted during the guilt phase, this Court found any error harmless beyond a reasonable doubt. We affirmed Evans' conviction for first-degree murder and his sentence of death. Evans v. State, 800 So.2d 182 (Fla.2001).
Since his conviction, Evans has been diagnosed with sarcoidosis, a progressive autoimmune disease.[2] This disease has caused Evans to go blind in both eyes. Evans has refused medicine and medical treatment for his disease, expressing a fear of being poisoned.
In October 2002, Evans filed a motion to vacate his conviction and sentence pursuant to Florida Rule of Criminal Procedure 3.851. Evans' collateral counsel also filed a motion under rule 3.851(g) to determine Evans' competency to proceed with the postconviction proceedings. A competency evaluation was held and Evans was found competent to proceed in October 2003. Thereafter, he filed an amended 3.851 motion, and an evidentiary hearing was held on August 31 and September 1, 2004. The circuit court issued an order denying all postconviction relief in November 2004.
Evans appeals the trial court's denial of his motion for postconviction relief and has petitioned this Court for a writ of habeas corpus.

APPEAL OF RULE 3.851 POSTCONVICTION MOTION
Evans appeals the denial of his postconviction motion to this Court, raising seven claims. Evans asserts: (1) it is cruel and unusual punishment to execute a physically handicapped and mentally impaired individual; (2) counsel rendered ineffective assistance by failing to file a motion to suppress all of the evidence seized after his arrest on a faulty arrest warrant; (3) counsel rendered ineffective assistance by failing to prepare Evans to testify at trial, by failing to investigate the circumstances of his escape case, and by failing to mitigate the escape offense by presenting this evidence at trial; (4) counsel rendered ineffective assistance by failing to investigate and challenge forensic evidence and inculpatory admissions made by Evans and *1041 others and by failing to impeach various witnesses at trial; (5) counsel rendered ineffective assistance by failing to investigate and present the testimony of alibi witnesses; (6) counsel rendered ineffective assistance by failing to investigate mental state defenses and by failing to give vital information to the mental health experts; and (7) the cumulative error deprived him of a fair trial. We address each claim in turn below.

Execution of Physically Handicapped and Mentally Impaired Individual
In the postconviction proceedings below, Evans' counsel claimed that Evans was incompetent to proceed with his postconviction motion. Evans also asserted that Florida's death penalty statute is unconstitutional as applied to him because the statute permits the execution of a defendant who has been found incompetent to stand trial. On appeal to this Court, Evans seems to have transformed these two claims into a new claim, namely that it is arbitrary and capricious and cruel and unusual punishment to execute him because he is physically handicapped by the debilitating and possibly fatal disease of sarcoidoisis and he is mentally impaired.
To the extent that Evans is arguing that the trial court erred in its finding that he was competent to proceed with the postconviction proceedings, we find no merit to the claim. Evans' competency to proceed with his postconviction motion was evaluated and litigated extensively in the proceedings below. Evans' postconviction counsel twice filed motions to determine his competency to proceed with the postconviction proceedings. Each time the court ordered mental health experts to conduct competency evaluations. However, with the exception of one court-appointed psychologist, Evans refused to talk to the mental health experts or to cooperate with their evaluations. Evans also refused to cooperate with the routine psychological examinations conducted by the prison mental health staff. At one point, the court ordered Evans transferred to the transitional care unit at the prison for observation and evaluation. He stayed in that unit for ten weeks. The one psychologist who was able to meet with Evans and conduct an evaluation opined that he was competent to proceed. Despite Evans' refusal to talk to a court-appointed psychiatrist, the psychiatrist offered his opinion that Evans was competent to proceed based on observations of Evans in the prison care unit and a review of numerous records. The mental health expert retained by Evans' postconviction counsel offered a contradictory opinion that Evans is a paranoid schizophrenic who is able to appear competent to someone who only observes him for a short time.
After hearing testimony from the mental health experts, the circuit court found Evans competent to proceed with the postconviction proceedings. The court concluded that Evans met the criteria for mental competence to proceed in Florida Rule of Criminal Procedure 3.211(a) in that he "has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and . . . has a rational, as well as factual, understanding of the pending proceedings." There is competent, substantial evidence in the record to support this conclusion.
To the extent that Evans is claiming that the death penalty statute is unconstitutional as applied to him because it permits the execution of a defendant who was twice adjudged incompetent to stand trial, we find no merit to his claim. On two separate occasions Evans was found not competent to be tried and had to be hospitalized. Evans was tried only after two experts opined that he was competent *1042 to be tried and the court found him competent to stand trial. There is no constitutional bar to the execution of an individual who has previously been judged not competent to stand trial, provided that the individual is not insane at the time of execution. See Fla. R.Crim. P. 3.811(a) ("A person under sentence of death shall not be executed while insane to be executed.").
To the extent that Evans argues that it is unconstitutional to execute him because he is physically handicapped and mentally impaired, this claim is not properly before the Court because it was not raised in the postconviction motion below.[3] "[T]he specific legal ground upon which a claim is based must be raised at trial and a claim different than that will not be heard on appeal." Spann v. State, 857 So.2d 845, 852 (Fla.2003) (quoting Rodriguez v. State, 609 So.2d 493, 499 (Fla.1992)); see also Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982). However, even if this claim were not procedurally barred, we would find it to be without merit.
As the State points out in its brief to this Court, neither claim relates to Evans' physical or mental status at the time of the offense or at the time of sentencing. Evans was found competent to stand trial and was found competent to proceed with his postconviction proceeding. He chose not to pursue a mental status defense at trial and his mental mitigating evidence was considered in sentencing. This claim regarding Evans' physical illness can most properly be classified as "newly discovered evidence of a subsequently occurring mitigating circumstance." It is not a basis for overturning a properly imposed death sentence in a postconviction proceeding. See, e.g., State v. Spencer, 176 Ariz. 36, 859 P.2d 146, 155 (1993) (holding that a defendant's post-incarceration illnesses do not constitute mitigating circumstances). We agree with the trial court that Evans' physical and mental condition may become an issue for further consideration if a death warrant is signed. At this stage of the proceedings, however, no postconviction relief is warranted. Cf. Diaz v. State, 945 So.2d 1136, 1151 (Fla.) (stating that mental illness has not been recognized as a per se bar to execution), cert. denied, ___ U.S. ___, 127 S.Ct. 850, 166 L.Ed.2d 679 (2006).

Ineffective Assistance of Counsel
Evans raises five claims regarding ineffective assistance of counsel during trial. These include counsel's failure to: move to suppress evidence that Evans claims was seized pursuant to a faulty arrest warrant; prepare Evans to testify at trial; challenge forensic evidence and admissions by Evans; investigate and present alibi witnesses; and investigate mental state defenses *1043 and give information to the mental health experts.
Claims of ineffective assistance of counsel are subject to the test set forth in the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Following Strickland, this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986). Where this Court previously has rejected a substantive claim on the merits, counsel cannot be deemed ineffective for failing to make a meritless argument. Melendez v. State, 612 So.2d 1366, 1369 (Fla.1992).
A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. See Strickland, 466 U.S. at 689, 104 S.Ct. 2052; see also Rivera v. Dugger, 629 So.2d 105, 107 (Fla. 1993). The defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). In Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000), this Court held that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct."
As to the first prong, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052; see also Cherry v. State, 659 So.2d 1069, 1072 (Fla. 1995). For the prejudice prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. See Strickland, 466 U.S. at 695, 104 S.Ct. 2052; see also Valle v. State, 705 So.2d 1331, 1333 (Fla.1997). A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied. Maxwell, 490 So.2d at 932. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual findings if they are supported by competent, substantial evidence, but reviewing the circuit court's legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004). Where the trial court has conducted an evidentiary hearing, this Court affords deference to the trial court's factual findings. McLin v. State, 827 So.2d 948, 954 n. 4 (Fla.2002). "As long as the trial court's findings are *1044 supported by competent substantial evidence, `this Court will not substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court.'" Blanco v. State, 702 So.2d 1250, 1252 (Fla. 1997) (quoting Demps v. State, 462 So.2d 1074, 1075 (Fla.1984)). We review each of Evans' claims of ineffective assistance guided by these principles of law.

1. Suppression of Evidence
Evans claims that trial counsel was ineffective for failing to file a motion to suppress evidence based on a faulty arrest warrant.[4] In denying this claim, the lower court acknowledged that Evans presented arguments regarding the validity of the arrest warrant in his separate Brevard County escape case.[5] However, the court ruled that Evans "did not establish an adequate connection to the instant case or present any evidence which established the absence of a valid warrant in the instant case." Evans asserts that this claim was sufficiently preserved and pled.
Evans' amended motion for postconviction relief to the trial court included only a single conclusory sentence about this claim: "Counsel was ineffective in failing to file a motion to suppress based on a faulty arrest warrant." There was no further explanation of what arrest warrant was at issue, the alleged faults of the warrant, or what evidence allegedly would have been suppressed had trial counsel successfully challenged the warrant.[6] At the evidentiary hearing, the public defender who represented Evans in the Brevard County escape case testified that he had never seen an arrest warrant in the escape case, the probable cause affidavit and other pertinent documents in the escape case were filed weeks after Evans was arrested on that charge in Orlando, and he was never contacted by Evans' trial counsel prior to the murder trial. Evans' trial counsel testified that she had no recollection of whether she investigated the circumstances of Evans' arrest on the escape charge and whether there was a basis for filing a motion to suppress.
Although Evans presented testimony relating to the validity of the escape warrant during the evidentiary hearing, he did not fully explain the connection of this warrant to the instant case nor establish trial counsel's ineffectiveness on this issue. While Evans attempted to fill in the missing connections and clarify the nexus through closing argument and a motion for rehearing, neither was an adequate substitute for evidence presented at the evidentiary hearing in support of the claim. Thus, we affirm the trial court's denial of postconviction relief on this claim.

2. Preparation to Testify
Evans claims that trial counsel was ineffective in failing to prepare him for testifying and in failing to investigate *1045 the circumstances of his escape and thereby present evidence to mitigate the escape offense. This claim is based on the following events at trial. The day after the defense had rested its case counsel informed the court that Evans had changed his mind and, against counsel's advice, wanted to testify at trial. When asked on cross-examination how many prior convictions he had, Evans answered one, which was not accurate. He also stated that he had a "conviction coming up," alluding to the escape offense. When counsel objected to this answer as unresponsive, there was a sidebar discussion about Evans' convictions. Counsel was then permitted to discuss this matter with Evans in a private conversation. Upon continuation of cross-examination, Evans volunteered that he had a "deviation from work release." The court interjected that Evans need only respond with the number of convictions. After another sidebar conference in which the prosecutor stated that Evans was misleading the jury by using the term "deviation," the prosecutor elicited from Evans that he had been convicted of escape from the work release center where he was serving a sentence. Defense counsel did not pose any questions on redirect.
At the postconviction evidentiary hearing, Evans' trial counsel testified that she did discuss the right to testify with Evans and explained to him that when asked about his convictions he should answer with a specific number. She also testified that she warned Evans of the risks of testifying and advised him not to do so. Counsel had no recollection of ordering files from the public defender relating to the escape offense.
The public defender who represented Evans on the escape charge explained the circumstances of the escape during testimony at the evidentiary hearing. Evans walked away from his work release site in Brevard County, which technically constituted an escape. When the manager of the work site arrived at the site, Evans was not there and could not be located on the grounds. The public defender further explained that this was not a "prison break" escape and Evans did not engage in violence to escape.
In denying postconviction relief on this claim, the lower court noted trial counsel's testimony at the evidentiary hearing and that it was Evans who revealed the nature of his second conviction. The court concluded that there was no reasonable probability that the outcome of the proceeding would have been different had counsel asked additional questions of Evans on this issue.
Counsel cannot be faulted for Evans' own blunder in revealing that he had a conviction for escape. Counsel had advised Evans not to testify, precisely to avoid such revelations. Evans ignored this advice, chose to testify after the defense had already rested its case, and informed counsel of his decision just minutes before court convened. While counsel might have been able to ameliorate any damage done by Evans' revelation had she elicited the details of his escape, we agree with the trial court that Evans has not met the Strickland prejudice prong. Even if the jury heard the details of the escape, there is no reasonable probability that this would have changed the sentence recommendation by the jury. Thus, Evans is not entitled to postconviction relief on this claim of ineffective assistance of counsel.

3. Forensic Evidence, Inculpatory Admissions, and Impeachment of Witnesses
This claim actually incorporates a number of claims regarding counsel's handling of testimony and evidence, including the testimony of Shana Wright about admissions made by Evans, information *1046 about the ownership of the murder weapon, and alleged admissions by other participants in the crime.
At trial Shana Wright testified about encountering Evans on a bus the day after the victim was killed. Evans told Wright "that he had to get a new suit because he got [the victim's] brains all over it." This admission was reinforced by the medical examiner's testimony that it was possible for the triggerman to get blood and brain matter on his clothing. Codefendants Gervalow Ward and Edward Francis also testified at trial that all three men had been splattered with blood on their pants and shoes when Lewis was shot in the head.
Evans argues that counsel was ineffective for failing to dispute this testimony with forensic evidence. At the evidentiary hearing, Evans' defense counsel admitted that she did not consult a blood spatter expert or ballistics expert to counter the "brain spatter" admission by Evans. Forensic expert Kenneth Zercie also testified at the evidentiary hearing that the evidence of the crime scene and the victim was not consistent with blood and brains splattering back on the shooter. Zercie based his opinion on the following facts: the wounds to the victim were not contact wounds because there was no gunshot residue on the victim; the .22 caliber ammunition would not necessarily cause an explosion on contact; the concise nature of the victim's wounds and the lack of seepage from the wounds; and the victim's tight "nappy" hair that would have retained matter close to the wound. However, on cross-examination Zercie admitted that the use of a homemade silencer on the gun would have inhibited the discharge of gunshot residue on the victim even if the shooting was from close range. Zercie also admitted that research shows that back spatter can occur with .22-caliber weapons.
In denying relief on this claim, the lower court noted that even had a crime scene reconstruction expert such as Zercie testified at trial, it "would not have eliminated the possibility that Mr. Evans did get blood on his clothes during the commission of the crime [when the victim was beaten in the apartment], blood that he mistakenly characterized as brain matter." Further, the court concluded, "the testimony of an expert such as Mr. Zercie would not have discounted the impact of Shana Wright's testimony that Mr. Evans admitted getting rid of his suit because he got brains all over it." Thus, we agree with the trial court that even if counsel's performance was deficient in this regard, no prejudice can be shown from the failure.
Evans also presented testimony from his mother on this claim at the evidentiary hearing. Evans' mother testified that he has a tendency to brag about things, but that she had never discussed this with trial counsel because she was never asked about it. Evans claims that had his mother testified about his bragging at trial, it would have cast doubt on his admission to Wright. We conclude that even if counsel were deficient in not presenting the mother's testimony, there is no reasonable probability that based on her testimony the result of the trial would have been different. See Strickland, 466 U.S. at 695, 104 S.Ct. 2052.
Evans further claims that counsel was ineffective for failing to impeach Wright's testimony that she initially did not tell the police about her conversation with Evans because she was scared. Evans claims that counsel's failure left the jury with the erroneous impression that Wright was afraid of Evans. We agree with the lower court that this claim is refuted by the record. Wright made this statement in her direct examination by the State. However, during cross-examination and *1047 redirect questioning Wright clarified that she was afraid of being "charged with something." Defense counsel also elicited that Wright voluntarily visited Evans just days after the murder in response to a phone call from him and that she had not sought protection from anyone. During closing argument, defense counsel specifically argued that Wright was motivated to testify as she did because she was afraid of being charged in the crime. Thus, the jury was not misled about Wright's motivation in initially concealing this conversation from the police.
Evans also claims that counsel was ineffective in failing to present information about the murder weapon, namely that the gun "belonged to" codefendant Edward Francis and that Francis had used this weapon to shoot another victim just weeks before Lewis's murder. Evans contends that had this evidence been introduced at trial, the jury would have had a reasonable doubt that he was involved in Lewis's murder and would have acquitted him. In denying relief on this claim, the lower court concluded that there was no reasonable probability that the outcome of the proceedings would have been different had counsel introduced additional evidence regarding the technical ownership of the weapon. We agree.
At trial, codefendant Gervalow Ward testified that Francis normally carried the .22-caliber gun. However, Ward also testified that Evans took the .22-caliber gun from the victim Lewis when Lewis arrived at the apartment, fashioned a silencer for the gun from an empty shampoo bottle stuffed with plastic bags, and shot Lewis in the head with the gun. Francis gave similar testimony about Evans' use of the gun in the murder. During closing argument, defense counsel reminded the jury that most of the witnesses testified that the .22-caliber gun belonged to Francis.
At the postconviction evidentiary hearing, Francis testified that the .22-caliber murder weapon was among a number of weapons stolen from Mark Quinn's employer. Francis also testified that while he considered the .22-caliber to be his gun, he was not allowed to actually keep the gun and Evans kept control of the gun. Francis admitted that he used the .22-caliber gun to shoot another individual several weeks before Lewis's murder. Francis also testified that Evans kept the .22-caliber gun after Lewis's shooting, but ordered Francis to get rid of the shampoo bottle that had been used as a silencer. When asked about the failure to introduce this evidence at trial, counsel explained that she was aware of Francis's possession and use of the murder weapon, but felt it would harm Evans because it would open the door to his participation in another violent crime.
Based on the evidence actually presented at trial about the "ownership" of the gun and the possible damage of introducing evidence about Evans' participation in another crime, we conclude that counsel made a strategic decision and was not deficient in her representation of Evans on this issue.
Finally, Evans claims that counsel was ineffective for failing to call Mark Quinn, an uncharged participant in the crime, to testify at trial about inculpatory statements he heard Ward and Francis make after the shooting. At the evidentiary hearing, Quinn testified that he did not accompany the other men to the back of the apartment complex where Lewis was shot and that he did not hear a gunshot. When the men returned to the front of the apartments, Quinn saw Ward and Francis with the .22-caliber gun and saw Ward put it inside his jacket. Quinn testified that Ward and Francis bragged about shooting Lewis when the group went to a convenience *1048 store shortly after the shooting. He heard them make similar statements later at a downtown bus stop.[7] However, Quinn's postconviction testimony also placed Evans at the scene of the murder, which Evans had denied throughout trial. Further, Quinn testified that Evans thought the victim was going to rob Wright, which gave Evans a motive for the killing.
On cross-examination at the evidentiary hearing, the State impeached Quinn with two earlier depositions. In a 1998 deposition, Quinn stated that Evans dominated the younger members of the gang and used his martial arts skills to inflict pain and control them. In a deposition two weeks before the evidentiary hearing, Quinn stated that Evans had admitted that he was the first to shoot the victim; that Quinn never saw the .22-caliber gun when the group returned from the back of the apartment complex, that he never saw Ward or Francis with a gun, and that Evans was also bragging about the shooting at the convenience store.
If Quinn had testified at trial, as Evans contends he should have, the jury would have heard that Quinn did not see the murder weapon in Evans' hands. However, they would also have heard that Evans was at the scene, had a motive for killing the victim, and had bragged about his participation. Further, Quinn's testimony was impeached by the damaging statements in his previous depositions. Thus, we agree with the trial court that there was no prejudice demonstrated by counsel's failure to use Quinn as a witness at trial.
Thus, Evans is not entitled to postconviction relief on the claim of ineffective assistance relating to the forensic evidence, inculpatory admissions, and the impeachment of witnesses.

4. Alibi Witness
Evans claims that his trial counsel was ineffective for failing to obtain the appearance of his girlfriend Nichole Taylor as an alibi witness. Evans alleges that Taylor could have testified that he was with her in her apartment on the night of the shooting.
Near the end of the State's case-in-chief at trial, defense counsel informed the judge that Taylor would not appear in court even though she had been served with a subpoena. Counsel also stated that she had discussed this matter with Evans, but could not personally ask the court for a writ of attachment to compel Taylor's appearance. Counsel gave only a vague response when the judge asked directly what the problem was. The prosecutor volunteered that, based on his deposition of Taylor, he believed that Taylor was not telling the truth and defense counsel was ethically constrained in presenting her testimony. The judge refused defense counsel's request for the court to issue its own writ of attachment to compel Taylor's appearance. The judge explained he did not want to compel Taylor to appear when her testimony might hurt Evans' case.
At the postconviction evidentiary hearing, Taylor testified that she was Evans' girlfriend at the time of the crime, that Evans was home with her every night in April 1996 when the murder occurred, that Evans was not involved in any gang activity, that she did not testify on Evans' behalf at trial because her boyfriend at the time threatened to beat her up if she testified, and that she had informed the defense investigator about this dilemma *1049 but the defense did nothing to assist her appearance in court.
Defense counsel related a strikingly different story in her postconviction hearing testimony. Counsel testified that Taylor called her during trial, stating that she had perjured herself at the deposition and was not going to do it again at trial. Taylor also told counsel that Evans had asked her to lie for him and had threatened to kill her and her child if she did not comply. Taylor told counsel that she was afraid of Evans. Counsel testified that she spoke to Evans and relayed the contents of her conversation with Taylor. Evans agreed that Taylor should not be called to testify at trial if she was going to make these accusations against him.
In denying relief on this claim, the lower court concluded that "counsel's decision not to seek a writ of attachment to secure this witness's testimony was more than reasonable under the circumstances, given the risk that [the witness] would have suddenly denied the alibi set forth in her deposition." We agree. Additionally, the court found Taylor's evidentiary hearing testimony was not credible and thus there was no reasonable probability that the outcome of the proceedings would have been different had Taylor been summoned to testify. We give deference to a trial court's assessment of witness credibility. See Stephens v. State, 748 So.2d 1028, 1034 (Fla.1999) ("We recognize and honor the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact. . . . In many instances, the trial court is in a superior position `to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor, and credibility of the witnesses.'") (quoting Shaw v. Shaw, 334 So.2d 13, 16 (Fla.1976)). Thus, we find no merit to Evans' claim that counsel was ineffective in failing to present this alibi witness at trial.

5. Mental Health Defenses
Evans claims that trial counsel was ineffective in investigating the mental state defenses of insanity and voluntary intoxication and for failing to give vital information to the mental health experts. The mental health information that Evans claims was withheld includes the pretrial depositions of Quinn and Francis, in which they describe Evans' behavior and consumption of alcohol and drugs on the night of the crime, and some letters and correspondence from Evans, in which he exhibits strange communication.
In denying relief on this claim, the trial court noted that numerous mental health evaluations had been conducted in this case. The court also outlined defense counsel's investigation of the mental health issues and the presentation of this evidence at the penalty phase. The court concluded that Evans "waived his right to proceed with a guilt-phase mental status defense when he instructed counsel not to prepare one, and it is not reasonable for him to . . . complain now that counsel's performance was deficient for complying with his instruction." We agree.
Evans' competency to stand trial was litigated extensively prior to trial. On two occasions, the trial court concluded that Evans was not competent to proceed with trial and had him hospitalized. Evans, 800 So.2d at 188. During the final competency determination, three experts offered conflicting evaluations, with two opining that Evans was competent to stand trial and one concluding that he was not competent. Id. On appeal, this Court found no error in the trial court's conclusion that Evans was competent to stand trial. Id. at 187-88.
While counsel did not present either an insanity or voluntary intoxication defense during the guilt phase of trial, there is *1050 record evidence that counsel investigated and pursued these defenses. This investigation is memorialized in counsel's correspondence with Evans, in which counsel explained that both insanity and voluntary intoxication were viable defenses. However, Evans refused to pursue these defenses, maintained that he was not present at the crime, and instructed counsel to pursue an alibi defense. In fact, despite counsel's advice that Evans not testify at trial and the fact that numerous witnesses testified about Evans' participation in the crime, Evans testified at trial that he was not present at the crime scene, had never been in Wright's apartment, was only an acquaintance of Wright and Francis, and did not know Ward at all.
At the penalty phase, the three mental health experts who had evaluated Evans testified about his mental state. Two of the experts opined that Evans suffers from bipolar disorder. Both of these experts examined Evans on numerous occasions and reviewed a number of documents, including the depositions of the codefendants and the witnesses who described strange behavior by Evans and his use of alcohol and drugs on the night of the crime. The third expert concluded that Evans suffers from a rare form of paranoid schizophrenia. He classified Evans as a "dissembler," a person who is psychotic and insane, yet tries hard to appear sane and has delusions about being sane. This third expert had also opined that Evans was not competent to stand trial.
At the Spencer hearing, Evans waived the presentation of any additional mitigating evidence and asked the court to follow the jury's recommendation and impose a death sentence. In accordance with the procedures in Koon v. Dugger, 619 So.2d 246, 250 (Fla.1993), defense counsel profferred additional mental health evidence, including the mental health reports from the appointed experts, depositions from codefendants, and letters to the court from family and friends.
Based on the evidence presented at trial and proffered at the Spencer hearing, the trial court found the statutory mental mitigators of extreme mental or emotional disturbance, which was given substantial weight, and substantially impaired capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of law, which was given some weight. On appeal, this Court found that the trial court gave proper weight to the impaired capacity mitigating factor based on the extensive record evidence that Evans' mental impairment did not impede his ability to appreciate the criminality of his actions. Evans, 800 So.2d at 196.
At the postconviction evidentiary hearing, the third mental health expert testified that trial counsel only provided him with the depositions of codefendants Quinn and Francis one week before trial and never gave him copies of the strange correspondence from Evans. The expert admitted, however, that this information did not change his pretrial diagnosis that Evans was not competent to stand trial.
Francis offered essentially the same testimony at the evidentiary hearing as he did at trial, i.e., Evans was drinking, smoking pot, and "acting weird" on the night of the murder. Quinn's testimony at the evidentiary hearing was similar and was cumulative to that presented through the testimony of Francis and Ward at trial. Trial counsel testified at the evidentiary hearing that Evans was adamant that she not pursue an insanity or mental state defense. Counsel nonetheless consulted with the appointed mental health experts and other mental experts to investigate possible defenses and mitigating circumstances.
*1051 We agree with the trial court that counsel's performance was not deficient on this issue. With respect to the investigation and presentation of mitigation evidence, the Supreme Court observed in Wiggins v. Smith, 539 U.S. 510, 533, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), that "Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does Strickland require defense counsel to present mitigating evidence at sentencing in every case." Rather, in deciding whether trial counsel exercised reasonable professional judgment with regard to the investigation and presentation of mitigation evidence, a reviewing court must focus on whether the investigation resulting in counsel's decision not to introduce certain mitigation evidence was itself reasonable. Id. at 523, 123 S.Ct. 2527; Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052.
This is not a case where counsel conducted no investigation or presented no mitigating evidence. See Rose v. State, 675 So.2d 567, 572 (Fla.1996) (concluding that defendant was entitled to relief in case where trial court found no mitigating circumstances and counsel made practically no investigation of mitigation and presented little mitigation evidence in the sentencing proceedings despite the existence of substantial evidence that would have been revealed by reasonable investigation); Torres-Arboleda v. Dugger, 636 So.2d 1321, 1326 (Fla.1994) (finding ineffective assistance of counsel during penalty phase where counsel made no attempt to investigate family history and background and admitted that he had no strategic reason for failing to present mitigating evidence during the penalty phase). In fact, the record in this case shows extensive investigation and evaluation of Evans' mental health status. The record also shows a very uncooperative client who absolutely refused to let counsel present a mental status defense. The mental health experts opined that Evans was competent to proceed to trial; the judge made a finding of competency to stand trial; and this Court affirmed that ruling on appeal. Thus, Evans had the right to control his defense after being informed by counsel about his options and the risks. Evans chose not to pursue a mental status defense. He is not entitled to postconviction relief because his choice was not an effective one.

Cumulative Error
Evans' final claim is that the cumulative effect of his alleged errors requires that he receive a new trial. However, because all of Evans' individual claims of error are without merit, his cumulative error claim must fail. See Griffin v. State, 866 So.2d 1, 22 (Fla.2003) ("[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail."); Vining v. State, 827 So.2d 201, 219 (Fla.2002) ("Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit."); Downs v. State, 740 So.2d 506, 509 (Fla.1999) (concluding that where allegations of individual error do not warrant relief, a cumulative error argument based thereon is without merit).

PETITION FOR WRIT OF HABEAS CORPUS
Evans has also filed a petition for writ of habeas corpus, raising five claims. He claims: (1) it is unconstitutional to execute a physically handicapped and mentally ill individual; (2) Florida's death penalty statute is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (3) the judge's finding *1052 of the "under a sentence of imprisonment" aggravating circumstance violates the requirements of Ring; (4) he is incompetent to be executed; and (5) appellate counsel rendered ineffective assistance for failing to raise an issue relating to the testimony of the medical examiner. We address each claim in turn below.

Execution of Physically Handicapped and Mentally Impaired Individual
This is the same issue raised in Evans' postconviction appeal, namely that it is unconstitutional to execute an individual who is physically handicapped by a debilitating disease and who is mentally ill. However, as we noted above, Evans was found competent to stand trial and was found competent to proceed with his postconviction proceeding. He chose not to pursue a mental status defense at trial and his mental mitigating evidence was considered in his sentencing. Evans' subsequently occurring physical illness is not a basis for overturning a properly imposed death sentence in a postconviction proceeding. See, e.g., State v. Spencer, 176 Ariz. 36, 859 P.2d 146, 155 (1993) (holding that a defendant's post-incarceration illnesses do not constitute mitigating circumstances). While Evans' physical and mental condition may become an issue for further consideration if a death warrant is signed, at this stage of the proceedings no habeas relief is warranted. Cf. Diaz v. State, 945 So.2d 1136, 1151 (Fla.) (stating that mental illness has not been recognized as a per se bar to execution), cert. denied, ___ U.S. ___, 127 S.Ct. 850, 166 L.Ed.2d 679 (2006).

Ring Claims
Evans raises several claims relating to the United States Supreme Court's decisions in Apprendi and Ring. Evans contends that Florida's capital sentencing statute, as applied in his case, is unconstitutional because: the jury was not required to make a specific finding that each aggravating circumstance was proven beyond a reasonable doubt; the jury was not required to reach a unanimous jury verdict as to a death sentence recommendation; and the judge made the finding of the "under sentence of imprisonment" aggravating circumstance based on evidence not presented to the jury. Evans also claims that in light of Ring the jury instructions violated the principles of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), because they diminished the jury's true role in his death sentence. He further claims that appellate counsel was ineffective for not raising these claims on direct appeal.
The United States Supreme Court's decision in Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), held that the decision in Ring is not retroactive. A majority of this Court has also concluded that Ring does not apply retroactively in Florida to cases that are final, under the test of Witt v. State, 387 So.2d 922 (Fla.1980). See Johnson v. State, 904 So.2d 400, 412 (Fla.2005). Accordingly, Evans' Ring claims are procedurally barred in these postconviction proceedings.
However, even if the claims were not barred, they would be without merit. This Court has recognized that a defendant is not entitled to relief under the "prior-conviction exception" to Apprendi[8] *1053 where the aggravating circumstances include a prior violent felony conviction. See, e.g., Duest v. State, 855 So.2d 33, 49 (Fla.2003) (noting rejection of Ring claims in a number of cases involving a prior-conviction aggravator); Grim v. State, 841 So.2d 455, 465 (Fla.2003) (explaining that defendant was not entitled to relief under Ring where aggravating circumstances of multiple convictions for prior violent felonies and contemporaneous felony of sexual battery were unanimously found by jury). In Evans' case, the trial court found the aggravating circumstance of a prior violent felony conviction based on Evans' previous conviction as a principal to robbery with a firearm. A unanimous jury found Evans guilty beyond a reasonable doubt of this offense, thereby satisfying the mandates of the United States and Florida Constitutions. See Kimbrough v. State, 886 So.2d 965, 984 (Fla.2004); Doorbal v. State, 837 So.2d 940, 963 (Fla.2003).
Additionally, this Court has rejected claims that Ring requires the aggravating circumstances to be individually found by a unanimous jury verdict. See Hodges v. State, 885 So.2d 338, 359 nn. 9 & 10 (Fla. 2004); Blackwelder v. State, 851 So.2d 650, 654 (Fla.2003); Porter v. Crosby, 840 So.2d 981, 986 (Fla.2003). The Court has also repeatedly rejected objections to Florida's standard jury instructions based on Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). See Mansfield v. State, 911 So.2d 1160, 1180 (Fla. 2005); Sochor v. State, 619 So.2d 285, 291 (Fla.1993); Turner v. Dugger, 614 So.2d 1075, 1079 (Fla.1992). Nor can appellate counsel be deemed ineffective for failing to raise Ring claims in Evans' 2000 direct appeal when the Supreme Court did not issue its opinion in Ring until 2002. Thus, Evans is not entitled to habeas relief on any of these Ring-based claims.

Incompetent to Be Executed
Florida Rule of Criminal Procedure 3.811(a) provides that "[a] person under sentence of death shall not be executed while insane to be executed." The rule also provides that "[n]o motion for a stay of execution pending hearing, based on grounds of the prisoner's insanity to be executed, shall be entertained by any court until such time as the Governor of Florida shall have held appropriate proceedings for determining the issue pursuant to the appropriate Florida Statutes." Fla. R.Crim. P. 3.811(c).
Evans concedes that this claim is not ripe for review as he has not yet been found incompetent and a death warrant has not been signed. He contends that he is only raising this issue for preservation purposes. This Court has repeatedly found that no relief is warranted on similar claims. See State v. Coney, 845 So.2d 120, 137 n. 19 (Fla.2003) (rejecting Coney's claim that he was insane to be executed where he acknowledged that claim was not yet ripe and was being raised only for preservation purposes); Jones v. State, 845 So.2d 55, 74 (Fla.2003) (finding claim that defendant may be insane to be executed "not ripe for review" where defendant had not been found incompetent and death warrant had not been signed yet; noting that defendant made claim "simply to preserve it for review in the federal court system"); Hall v. Moore, 792 So.2d 447, 450 (Fla.2001) (stating that it is premature for a death-sentenced individual to present a claim of incompetency or insanity, with regard to his execution, if a death warrant has not been signed).
Thus, Evans is not entitled to habeas relief on this claim.

Ineffective Assistance of Appellate Counsel
Claims of ineffective assistance of appellate counsel are appropriately presented in a petition for writ of habeas *1054 corpus. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). To prove ineffective assistance of appellate counsel in a habeas corpus proceeding, a claimant must show that appellate counsel performed deficiently and that the deficiency compromised the appellate process to such degree as to undermine confidence in the fairness and correctness of the appellate result. See Teffeteller v. Dugger, 734 So.2d 1009, 1027 (Fla.1999); Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla.1985). Appellate counsel is not ineffective for failing to raise issues not preserved for appeal. See Medina v. Dugger, 586 So.2d 317, 318 (Fla. 1991). Moreover, "[i]f a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective." Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000) (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)).
Evans claims that his appellate counsel was ineffective for failing to raise as error the medical examiner's testimony regarding possible blood and brain spatter on the person who shot the victim. This claim is interconnected with issue four in the postconviction appeal above, in which Evans claims that trial counsel was ineffective for failing to utilize a crime scene reconstruction expert to challenge the validity of Evans' statement to Wright about spatter on his clothing. The State correctly notes that appellate counsel could not have raised any issue related to what a "crime scene expert" could have testified to had one been called by the defense as no such witness was called at trial.
The second aspect of this claim relates to the testimony of the medical examiner regarding possible blood spatter from the victim. Evans now complains that the medical examiner was not qualified to provide an opinion regarding blood spatter because he is neither a crime scene reconstruction expert nor a ballistics expert and that appellate counsel should have raised this as error on appeal. However, the record shows that defense counsel's objection was not based on the medical examiner's qualifications to answer a question involving ballistics and blood spatter. When the State asked the medical examiner if it was possible for blood and brain matter to spatter on the clothing of a shooter standing next to the victim, as Evans had stated to Wright, defense counsel objected that the question was speculative and hypothetical. Thus, the claim asserted in this habeas petition was not preserved at trial and appellate counsel cannot be deemed ineffective for failing to raise it. See Medina, 586 So.2d at 318. Evans is not entitled to habeas relief on this issue.

CONCLUSION
For the reasons stated above, we affirm the trial court's denial of postconviction relief and we deny Evans' petition for a writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ, concur.
NOTES
[1] Spencer v. State, 615 So.2d 688 (Fla.1993).
[2] Ophthalmologist Dr. Vivian Allen testified at the evidentiary hearing that Evans has lost vision in both of his eyes from sarcoidosis, an autoimmune disease that can form nodules throughout the body. Evans' lungs, abdomen, and liver have also been affected by the disease. Some patients respond to treatment with prednisone, but the disease cannot be cured. Dr. Allen testified that Evans' prognosis is poor and he is likely to die from the disease. The significant onset of Evans' disease occurred in 2000.
[3] At the evidentiary hearing, ophthalmologist Dr. Vivian Allen testified about the diagnosis of sarcoidosis and the progression of the disease in Evans. However, Dr. Allen's testimony was directed to the issue of Evans' competency and mental state. Dr. Allen was questioned about Evans' strange manner of communicating with the doctor, his failure to take the prescribed medication, and his representation that prison officials were not treating his disease. There is no mention of Dr. Allen's testimony or Evans' disease in the trial court's order denying postconviction relief. In fact, in his motion for rehearing, Evans argued that the court failed to address his current medical condition. In denying rehearing, the court noted that Evans' current medical condition "has no relevance to the validity of his judgment and sentence, and provides no basis for postconviction relief." The court explained that "[i]f and when a death warrant is signed, [Evans'] physical and mental condition may become an issue for further consideration," but is not at the current time.
[4] Evans asserts that the warrant in the escape case was not valid because it was signed by a designee of the Secretary of the Department of Corrections (DOC), but the Secretary, and not the designee, was the person listed in the body of the warrant as certifying the validity of the facts stated in the warrant.
[5] Evans had been convicted of a felony and sentenced to a term of five and a half years in DOC custody. Evans was serving his sentence in a work release program in Brevard County. Evans walked away from the work site before his sentence expired, which constituted an escape.
[6] In closing argument at the postconviction hearing, Evans argued that his shoes were seized upon his arrest on the escape charge and were used to place him at the murder scene. The treads on the shoes seized from Evans were consistent with shoe prints found at the crime scene.
[7] Prior to trial, Francis and Ward made statements to the police implicating each other as Lewis's shooter. At trial, each admitted that his original statement was a lie and testified that Evans had shot Lewis.
[8] In Apprendi v. New Jersey, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added).