PER CURIAM.
 

 Samuel L. Smithers appeals an order of the circuit court denying his motion to vacate his convictions of first-degree murder and sentences of death filed under Florida Rule of Criminal Procedure 3.851. Smithers also petitions this Court for a writ of habeas corpus. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(1), (9), Fla. Const. For the reasons expressed below, we affirm the postconviction court’s order and deny the petition for a writ of habeas corpus.
 

 I. BACKGROUND
 

 Smithers was convicted of two counts of first-degree murder for the 1996 killings of
 
 *462
 
 Cristy Cowan and Denise Roach. He was sentenced to death on both counts. This Court set out the facts of the case on direct appeal:
 

 In 1995, Sam Smithers agreed to mow the grass at a vacant Plant City house owned by Marion Whitehurst....
 

 In 1996, Smithers and Whitehurst renewed their agreement. Smithers mowed the lawn the week of May 20 and Whitehurst paid Smithers on May 26. At approximately 7 p.m. on May 28, Whitehurst decided to stop by the property. The gate was locked when she arrived, but after opening the gate and driving to the house, Whitehurst found Smithers’ truck parked just outside the carport.... Whitehurst noticed a pool of blood in the carport. Smithers told her that someone must have come by and killed a small animal. He assured her that he would clean up the mess.
 

 Although Whitehurst left the house, she was bothered by the pool of blood, and therefore she contacted the Sheriffs Department. Later that night, Deputy Skolnik met Wfliitehurst at the property. The pool of blood had been cleaned up, but the deputy noticed what appeared to be drag marks in the grass leading towards one of the ponds. The deputy followed the drag marks down to the pond and discovered a dead female body floating in the water. The woman was later identified as Cristy Cowan. A dive team subsequently discovered a second dead female body in another part of the pond. She was later identified as Denise Roach.
 

 [[Image here]]
 

 Smithers told the detectives the following version of events regarding the Cowan murder. Smithers was coming home from work when he spotted a car on the side of the road. He stopped to assist the driver (Cowan) and drove her to a convenience store. Once back in his truck, Cowan demanded money and threatened to accuse him of rape if he did not give her money. Smithers drove Cowan to the Whitehurst property. Smithers gave Cowan all the money that he had but she still was not satisfied and she threw a drink at him. In response, he picked up an axe and struck Cowan in the head. She fell down unconscious and he dragged her to the pond. He returned to the carport to rinse off the axe when Whitehurst arrived. During the time that Whitehurst was there, he could hear Cowan making noises from the pond (Whitehurst testified that she never heard any sounds). When White-hurst left, he went back to the pond and hit Cowan in the head “to shut her up.” He also threw some tree limbs at her.
 

 Later in the interview, Smithers explained to the detectives his involvement with the Roach murder. On May 7, Smithers was at the Whitehurst property mowing the lawn when Roach approached him. Roach told him that she had permission to be on the property. When Smithers returned to the White-hurst property on May 13, Roach was still there. Smithers asked her to leave and she refused. Roach then hit Smith-ers on the arm and Smithers punched Roach in the face. Smithers said that Roach picked up a planter in the carport and threw it at Smithers’ truck, causing a dent. Smithers shoved Roach against the wall, causing a piece of wood to fall down from a shelf and hit her on the head. Roach fell to the ground unconscious. Smithers left the property, but he returned the next day and dragged her body to the pond. He cleaned up the blood with mop and a bucket of water.
 

 Smithers v. State,
 
 826 So.2d 916, 918-20 (Fla.2002). Despite giving this statement
 
 *463
 
 to law enforcement officers, Smithers testified during the guilt phase of his trial that he did not kill Roach or Cowan. He testified that another man killed the women and coerced Smithers into disposing of the bodies.
 

 The jury found Smithers guilty on both counts and, after a penalty phase, unanimously recommended the death sentence for each murder. The sentencing court followed the jury’s recommendation and imposed the death sentence for each murder. The sentencing court found three aggravating factors in the Cowan murder and two aggravating factors in the Roach murder. It also found two statutory and seven nonstatutory mitigating factors applicable to each murder.
 
 Id.
 
 at 922. Smithers appealed his convictions and sentences. This Court affirmed the convictions and sentences.
 
 Id.
 
 at 931.
 

 On April 7, 2006, Smithers filed an amended motion to vacate judgment of conviction and sentence, raising seven claims. The postconviction court held an evidentiary hearing on Smithers’ claims alleging ineffective assistance of counsel. After considering the evidence presented, the postconviction court denied the motion. Smithers now appeals the postconviction court’s denial. He argues that the court erred in denying parts of two of his ineffective assistance of counsel claims.
 
 [1]
 
 In addition, Smithers filed a petition for a writ of habeas corpus, raising five claims.
 

 II. MOTION FOR POSTCONVICTION RELIEF
 

 On appeal, Smithers argues that the postconviction court should have found that trial counsel provided ineffective assistance by failing to (A) strike a prospective juror for cause; (B) seek exclusion of a portion of Smithers’ statement to law enforcement; (C) adequately investigate mental health mitigation; and (D) call an independent medical examiner as a defense expert.
 

 In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both that trial counsel’s performance was deficient and that the deficient performance prejudiced the defendant so as to deprive him of a fair trial.
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As to the first prong, the defendant must establish that “counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.”
 
 Id.
 
 at 687, 104 S.Ct. 2052;
 
 see also Cherry v. State,
 
 659 So.2d 1069, 1072 (Fla.1995). For the second prong, the reviewing court must determine whether there is a reasonable probability that but for the deficiency the result
 
 *464
 
 of the proceeding would have been different. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.”
 
 Strickland,
 
 466 U.S. at 694, 104 S.Ct. 2052. This Court employs a mixed standard of review, deferring to the postconviction court’s factual findings that are supported by competent, substantial evidence, but reviewing legal conclusions de novo.
 
 See Sochor v. State,
 
 883 So.2d 766, 771-72 (Fla.2004).
 

 A. Failure to Strike Prospective Juror
 

 Smithers argues that the postcon-viction court erred in denying his claim that trial counsel was ineffective for not challenging juror Collins for cause based on statements made by Collins during voir dire concerning his views on the death penalty. Because the full context of Collins’ statements does not show that Collins was actually biased, we conclude that the postconviction court did not err in denying this claim.
 

 In
 
 Carratelli v. State,
 
 961 So.2d 312, 324 (Fla.2007), this Court held that “where a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased” to be entitled to relief. Without a showing of such actual bias of the juror, the defendant cannot establish the prejudice required by
 
 Strickland.
 
 The Court explained in
 
 Carratelli
 
 that
 

 actual bias means bias-in-fact that would prevent service as an impartial juror. Under the actual bias standard, the defendant must demonstrate that the juror in question was not
 
 impartial
 
 — i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record.
 

 Id.
 
 (citation omitted).
 

 In
 
 Owen v. State,
 
 986 So.2d 534 (Fla.2008), this Court applied the
 
 Carratelli
 
 standard to a claim that trial counsel was ineffective for not exercising a cause or a peremptory challenge to strike a potential juror. The Court held that there was no evidence of bias in the record where a juror stated that she “[pjrobably” would vote for the death penalty in the circumstance of multiple victims but ultimately stated that mitigating evidence such as testimony about the defendant’s mental health could influence her to recommend a life sentence.
 
 Id.
 
 at 550.
 

 In this case, the defense argues that the following exchange gave counsel reason to challenge juror Collins for cause.
 

 MR. ROBBINS: Okay, I guess the same questions, can you conceive of circumstances that you think might be worth considering as far as mitigating circumstances, things involving either people’s mental or physical circumstances, upbringing, those sorts of things?
 

 PROSPECTIVE JUROR COLLINS: I guess it depends if the person is abused as a kid or something, I don’t know. But if they are guilty without a doubt they should get the death penalty.
 

 MR. ROBBINS: If someone is found guilty and you are totally convinced they are guilty of the offense whatever that particular murder case is about, do you feel that there could ever be any other sentence except the death penalty for first degree murder?
 

 PROSPECTIVE JUROR COLLINS: Maybe life without parole.
 

 MR. ROBBINS: Those are the two choices by the way, life without parole or the death penalty. But what I’m asking is do you feel there could be circumstances where you vote for a recommendation for life?
 

 PROSPECTIVE JUROR COLLINS: Yes, if I have to.
 

 
 *465
 
 Juror Collins’ statements did not show a biased unwillingness to consider potential sentences other than death. Rather, similar to the comments considered in
 
 Owen,
 
 juror Collins expressed that he could consider life without parole as a possible sentence for first-degree murder and that if under Florida law the circumstances compelled a life recommendation, he would recommend life. Thus, the record does not demonstrate actual bias that would prevent juror Collins from serving as an impartial juror. Accordingly, the postcon-viction court did not err in denying this claim.
 
 [2]
 

 B. Failure to Seek Exclusion of a Portion of Smithers’ Confession
 

 Smithers alleged that defense counsel Daniel Mario Hernandez was ineffective for not making a motion to exclude a portion of Smithers’ confession. During the guilt phase, Detective Dorothy Flair, also known as Detective Martinez, testified that she interviewed Smithers on the night that the bodies were discovered and on the following day. She testified to the substance of both interviews, including the following description of Smithers’ statements about the murder of Denise Roach:
 

 Q. Okay. What was his response to her hitting him on the shoulder or the arm?
 

 A. He told her that she wasn’t going to hit him and he said he got upset about it.
 

 Q. Did he tell you whether or not he hit her in any part of her body?
 

 A. He said he hit her several times with a fist, with his first [sic],
 

 Q. And did he tell you where on the body?
 

 A. In her face and head.
 

 Q. Did he tell you — Did he make any comments as to whether or not he had hit her again?
 

 A. After that, yes.
 

 Q.
 
 Yes. Did anything kick in that make her
 
 — made
 
 him hit her again?
 

 A.
 
 He said that some prejudice may have set in so he hit her again.
 

 Q.
 
 And this is because she was black?
 

 A.
 
 Yes.
 

 Q. After he hits her again does he tell her that he is going to call the police?
 

 A. Yes.
 

 Q. And does he tell you how she reacts?
 

 A. She throws the planter against his truck.
 

 (Emphasis added.) After this exchange, Detective Flair testified concerning Smith-ers’ statements about the additional injuries he inflicted on Roach.
 

 During the postconviction evidentiary hearing, trial counsel Hernandez testified that at the time of trial, he considered the fact that Smithers may have been prejudiced against the victim to be “inextricably intertwined with the facts of the ease.” He explained that it was only “in retrospect” that he recognized that he could have filed a nonfrivolous motion to exclude the prejudice comment on the basis that the danger of unfair prejudice outweighed the probative value. Because the postcon-viction court found that it was “reasonable
 
 *466
 
 professional judgment of counsel to believe the racial bias was inextricably intertwined with the crime charged,” the court concluded that trial counsel was not deficient. The postconviction court also concluded that Smithers did not establish that the admission of the statement “was so prejudicial that confidence in the outcome was undermined.”
 

 Even if an objection to the admission of this portion of Smithers’ statement would have been meritorious — which we do not decide — we conclude that Smithers has not established the requisite prejudice under the
 
 Strickland
 
 standard. Considering “the totality of the evidence,” we conclude that Smithers has not “met the burden of showing that the decision reached would reasonably likely have been different absent” the admission of Smithers’ comment regarding his racial prejudice.
 
 Strickland,
 
 466 U.S. at 695-96, 104 S.Ct. 2052.
 

 Detective Flair’s testimony about Smith-ers’ statement to law enforcement officers spanned nearly thirty pages in the record. Detective Flair testified that Smithers admitted to beating and killing Roach and Cowan and to attempting to dispose of their bodies in a pond. The challenged comment was only a few lines of the testimony about Smithers’ detailed admission. In addition, other evidence connected Smithers to the murders. Smithers and Cowan were seen together on a convenience store videotape filmed about an hour before Whitehurst discovered the pool of blood in the carport. Shoe prints by the pond matched the shoes found in Smithers’ home. Smithers’ fingerprint was found in the kitchen of Whitehurst’s house, and Smithers could not be excluded as the contributor of a semen stain that was found in the house.
 
 Smithers,
 
 826 So.2d at 919. Furthermore, the State did not mention the possible racial motivation for the murder during its guilt-phase closing argument, and thus the jury was not reminded of the challenged testimony before deliberating. Given the persuasive evidence that Smithers committed the murders and the fact that the State did not emphasize the challenged testimony during closing, there is no reasonable probability that the jury improperly convicted Smith-ers of either murder due to his expression of racial bias, rather than properly convicted him based on the evidence of his guilt. Trial counsel’s alleged deficiency does not undermine confidence in the verdict.
 

 As for sentencing, the State alluded to the evidence of racial bias once in its penalty-phase closing argument. The prosecutor used the phrase “I guess prejudice set in” when paraphrasing Smithers’ statement about the Roach murder. Smithers asserts that the evidence influenced at least one juror’s decision to recommend death.
 

 In
 
 Robinson v. State,
 
 520 So.2d 1, 7 (Fla.1988), a direct appeal, we stated that “the risk of racial prejudice infecting a criminal trial takes on greater significance in the context of a capital sentencing” where the jury is called upon to make a “highly subjective” evaluation. The facts presented in
 
 Robinson
 
 were, however, very different from the facts presented here. In
 
 Robinson,
 
 we concluded that “the prosecutor’s examination of [a] witness was a deliberate attempt to insinuate that [the defendant] had a habit of preying on white women and thus constituted an impermissible appeal to bias and prejudice.”
 
 Id.
 
 at 6. We further concluded that the error could not be deemed harmless because we could not “presume that the prejudicial testimony did not remain imbedded in the minds of the jurors and influence their recommendation.”
 
 Id.
 
 at 8. The passing reference to Smithers’ statement concerning his prejudice is of a different character than the prosecutor’s cal
 
 *467
 
 culated attempt in
 
 Robinson
 
 to play on any racial prejudice held by the jurors.
 

 Our decision in
 
 State v. Davis,
 
 872 So.2d 250 (Fla.2004), is also readily distinguishable. In
 
 Davis,
 
 defense counsel, during voir dire of a panel of prospective jurors, said: “Sometimes I just don’t like black people. Sometimes black people make me mad just because they’re black.”
 
 Id.
 
 (emphasis removed). We concluded that Davis was entitled to postconvietion relief because “the expressions of racial animus voiced by trial counsel during voir dire so seriously affected the fairness and reliability of the proceeding that our confidence in the jury’s verdicts of guilt [wa]s undermined.”
 
 Id.
 
 at 253. The improper and inflammatory comments made by defense counsel in
 
 Davis
 
 are very different from the comment made by Smithers which is at issue here.
 

 Moreover, Smithers does not address how the comment could have affected the evaluation of the aggravating and mitigating factors by the jury or the sentencing court.
 
 See Jones v. State,
 
 998 So.2d 573, 585 (Fla.2008) (“ ‘Prejudice ... is shown where, absent the errors, there is a reasonable probability that the balance of aggravating and mitigating circumstances would have been different or the deficiencies substantially impair confidence in the outcome of the proceedings.’ ” (quoting
 
 Gaskin v. State,
 
 737 So.2d 509, 516 n. 14 (Fla.1999))). As discussed above, admission of the evidence of racial bias does not undermine confidence in either of the contemporaneous murder convictions that supported the prior violent felony aggravating factors, and the evidence has no bearing on whether the aggravating factor of cold, calculated, and premeditated (CCP) was applicable to the Cowan murder. And while the comment may have supported the conclusion that Smithers acted from a particularly wicked or vile motive in the Roach murder, the comment was immaterial to whether the killing was “unnecessarily torturous to the victim.” Fla. Std. Jury Insto. (Crim.) 7.11 Penalty Proceedings — Capital Cases (defining heinous, atrocious
 
 or
 
 cruel aggravating factor). In short, there is no “reasonable probability” that absent the admission of Smithers’ comment concerning his racial prejudice, “the balance of aggravating and mitigating circumstances would have been different” in the eyes of either the jury — which unanimously recommended death for the murders — or the sentencing court.
 
 Jones,
 
 998 So.2d at 585.
 

 In conclusion, the postconvietion court did not err in concluding that Smithers was not entitled to relief on this claim.
 

 C. Failure to Adequately Investigate Mental Health Mitigation
 

 In this claim, Smithers argues that his trial counsel was ineffective in investigating available mitigation evidence. Smithers asserts that trial counsel unreasonably failed to provide the defense’s mental health expert, Michael Scott Maher, M.D., with an investigative report documenting Smithers’ claim that Dean Snyder, Smithers’ neighbor, was present when a man in a Bentley approached Smithers.
 
 [3]
 
 
 *468
 
 He further asserts that counsel unreasonably failed to interview Dean Snyder and to provide Dr. Maher with the results of the Snyder interview. Smithers explains that Snyder’s statement that he never saw the man in the Bentley was evidence of a hallucination by Smithers.
 

 The postconviction court denied this claim, concluding that trial counsel’s performance was adequate because he presented two expert witnesses about Smithers’ possible psychosis and additional testimony to establish mitigating factors. The postconviction court explained that “changed opinions” do not establish ineffective assistance of counsel. After reviewing the postconviction record and the trial record, we conclude that Smithers has failed to demonstrate prejudice. The postconviction court, therefore, did not err in denying relief on this claim.
 

 During the penalty phase, Dr. Maher diagnosed Smithers as suffering from a dissociative disorder not otherwise specified. Dr. Maher explained that while Smithers was “out of touch with reality in significant aspects of his beliefs and his ideas,” he found insufficient information to diagnose psychosis. He stated, “I can’t say he was not psychotic during some of these dissociative episodes but I’m not going to make the diagnosis simply out of uncertainty or in spite of some testing that shows he might be psychotic.” Later, Dr. Maher again clarified, “I think he might have psychotic — I’m not saying he doesn’t but it is not part of my diagnosis that there are psychotic episodes.” He opined that both statutory mental health mitigating factors, extreme mental or emotional disturbance and substantially impaired capacity, were applicable to the murders and described each murder as “an impulsive action taken by a man who was in the midst of a dissociative episode.” During cross-examination, Dr. Maher agreed that “dissociative disorder with possible psychotic features” would be an accurate description of the diagnosis.
 

 At the postconviction evidentiary hearing, Dr. Maher testified that after reviewing the investigative report and learning that Snyder would testify that he never saw a man in a Bentley approach Smith-ers, Dr. Maher revised his diagnosis to “[pjsychotic episode recurrent.” Dr. Maher testified that Smithers’ insistence about the Bentley incident and Snyder’s lack of corroboration was “a pretty strong suggestion of psychosis or a drug-induced delirium or some other very substantial disturbance or perception and reality.” He explained that at the time of trial, he was close to diagnosing Smithers with psychosis and that an “incident such as this which is clear and definite would in my judgment have led me to conclude that he was psychotic previously.”
 

 Dr. Maher’s revised diagnosis is largely cumulative to the opinion offered by Dr. Robert Berland, who testified as an expert in forensic psychology during the penalty phase. Dr. Berland diagnosed Smithers as having “a chronic mental illness, a chronic psychotic condition, at least in part a by-product of brain injury.” Dr. Berland testified that Smithers’ ex-wife told him about Smithers “doing things which are associated with auditory and tactical hallucinations.” He opined that at the time of the murders, Smithers was “suffering from an extreme mental or emotional disturbance” as a result of “a chronic psychotic disturbance effecting [sic] his judgment
 
 *469
 
 and behavior” and that while Smithers’ ability to appreciate the criminality of his conduct was not substantially impaired, his ability to conform his conduct to the requirements of law was substantially impaired. Dr. Berland further opined that at the time of the murders, Smithers “had an ongoing problem ... involving a series of delusions and hallucinations and mood disturbance and a panoramic distortion in his judgment and perceptions.”
 

 In light of the evidence presented at trial and the sentencing court’s findings, we conclude that Dr. Maher’s revised opinion does not undermine confidence in the death sentences. After considering the testimony of Dr. Maher, Dr. Berland, Dr. Wood (who testified about a PET scan and an MRI examination of Smithers), and the State’s mental health experts, Dr. Donald Taylor and Dr. Barbara Stein, the sentencing court concluded that the mitigating factor of extreme mental or emotional disturbance was proven and was entitled to moderate weight. The sentencing court also concluded that the mitigating factor of substantially impaired capacity was proven and entitled to moderate weight. Despite finding these mitigating factors, the sentencing court “agree[d] with the unanimous jury that in weighing the aggravating circumstances against the mitigating circumstances, the scale tilts unquestionably to a sentence of death.”
 

 There is no reasonable probability that the sentencing court would have given significantly more weight to the statutory mental health mitigating factors had Dr. Maher diagnosed Smithers as suffering from psychotic episode recurrent, rather than dissociative disorder with possible psychotic features. While the sentencing court was not aware of the possible hallucination about the man in the Bentley, the sentencing court was aware of Smithers’ mental illness and considered how that illness impacted his actions at the time of the murders. When considered in context, the change in Dr. Maher’s diagnosis simply does not rise to the level of undiscovered mitigation previously found to require a new penalty phase.
 
 See, e.g., Hildwin v. Dugger,
 
 654 So.2d 107, 110 (Fla.1995) (holding defendant prejudiced where trial counsel presented only lay witnesses and failed to present evidence of defendant’s psychiatric hospitalizations and suicide attempts);
 
 Phillips v. State,
 
 608 So.2d 778, 782-83 (Fla.1992) (holding defendant prejudiced where trial counsel admitted doing “virtually no preparation” for penalty phase and failed to present evidence of borderline mental retardation, schizoid personality, head injury, and lifelong deficits in adaptive functioning).
 

 D. Failure to Call Independent Medical Examiner as Defense Expert
 

 In his final postconviction claim, Smithers argues that his trial counsel was ineffective for not retaining an independent medical examiner to refute testimony and argument about whether victim Cowan was alive and conscious when she was placed in the pond. The postconviction court found that counsel was not ineffective. We agree.
 

 At trial, Dr. Laura Hair, Associate Medical Examiner in District Six, testified that based on the foam cone found around Co-wan’s mouth, the body being recovered from water, and the possibility that someone heard the victim calling from the pond, drowning was a “possibility.” Dr. Hair explained:
 

 At the time of the autopsy I did not consider the possibility of drowning. I really believed her to have been dead from her injuries in the pond. I got information later on that she may well have been making noise and that foam cone is probably indicative of drowning.
 

 
 *470
 
 When asked if the congestion found in Cowan’s lungs was consistent with drowning, Dr. Hair answered: “It’s possible. It’s consistent with a lot of things actually.” Ultimately, Dr. Hair opined that the cause of death was “the combined effects of the manual strangulation and chop wounds of the head.” She did not testify about whether the chop wounds were inflicted before or after Cowan was strangled, and she did not testify about at what point during the attack Cowan likely lost consciousness.
 

 On cross-examination, the following exchange occurred between defense counsel and Dr. Hair:
 

 Q. So you are testifying that foaming could be indicative of drowning. That’s simply a possibility?
 

 A. Yes.
 

 Q. You are not able to make any conclusion correct?
 

 A. No.
 

 Q. In fact I believe you testified that you did not even think about drowning until you were told that somebody had said they heard voices, correct?
 

 A. That’s correct, yes, sir.
 

 Q. And in fact you did not list it as a cause of death in preparing the Certificate of Death?
 

 A. That’s correct.
 

 On re-cross-examination, defense counsel questioned Dr. Hair about whether the foam cone could have been caused by air escaping the body after death.
 

 Q. That [foam if caused by last breaths or trapped air] is not an indication of breathing, correct?
 

 A. No.
 

 Q. And the person could be for that matter be unconscious when this is occurring?
 

 A. You can breathe when you are unconscious, yes.
 

 Q. And the person could be dead and there could be you said air that was trapped in the lungs that was escaping, is that correct?
 

 A. That’s correct.
 

 At the postconviction evidentiary hearing, Dr. Ronald Keith Wright, M.D., testified as an expert in forensic pathology on behalf of Smithers. Dr. Wright opined that Cowan’s cause of death was manual strangulation and that it was “highly unlikely” that she died of drowning. He testified about the specific physiological factors that caused him to believe she did not drown in freshwater, including the relatively light weight of her lungs, the lack of hemorrhaging to the mastoid air sinuses, and the lack of right-heart fibrillation.
 
 [4]
 

 Trial counsel Scott Lyon Robbins testified that the defense strategy had been to argue that Cowan died of blunt trauma, not strangulation, before she was in the water. Attorney Robbins explained that he made a strategic decision that Dr. Ham’s testimony supported the defense’s arguments. Attorney Robbins stated:
 

 My decision at the time was that we had what we needed to make the arguments we were trying to make from Dr. Hair’s testimony. At that time that was what we proceeded with, that she wasn’t given [sic] a definitive strangulation over the blunt trauma. She really wasn’t saying which it was. There wasn’t any statement as to whether the witness was conscious at any point. And to show that there was, you know, there was a particular painful or drawn out or cruel
 
 *471
 
 death was something that she really didn’t nail down very well. And so that was the point we were trying to make was that that wasn’t proven.
 

 Because Smithers did not demonstrate that this decision to rely on Dr. Hair’s testimony was unreasonable, the postcon-viction court did not err in denying this claim. In
 
 Belcher v. State,
 
 961 So.2d 239 (Fla.2007), this Court rejected a similar argument that defense counsel should have presented its own expert gynecologist, rather than relying on cross-examination of the State’s expert. In that case, trial counsel testified that the defense felt that the State expert could “give them what they wanted.”
 
 Id.
 
 at 250. This Court affirmed the denial of relief, finding that counsel made a reasonable strategic decision. The Court explained that it is not necessary for defense counsel to retain a defense expert “where defense counsel cross-examined the State’s experts to establish the facts necessary for the defense.”
 
 Id.
 
 In this case, Dr. Hair’s testimony was silent as to whether Cowan was conscious during the strangulation and agreed that the evidence did not exclude the possibility that she was unconscious when placed in the pond. Thus, Dr. Hair’s testimony was consistent with the defense’s argument that Cowan lost consciousness quickly due to blows to the head. Accordingly, trial counsel was not deficient.
 

 Moreover, Smithers failed to prove deficiency because much of Dr. Wright’s testimony would have been harmful to the defense. Dr. Wright’s testimony contradicted the argument that Cowan lost consciousness quickly due to blows to the head. He testified that based on the lack of internal bleeding, Cowan’s head injuries were inflicted postmortem or peri-mortem after she was strangled to unconsciousness.
 
 See Rose v. State,
 
 985 So.2d 500, 505-06 (Fla.2008) (finding counsel made reasonable tactical decision not to call expert to discuss photographs due to concern that evidence could have harmed defense);
 
 Provenzano v. State,
 
 616 So.2d 428, 432 (Fla.1993) (finding counsel not deficient for failing to introduce records that contradicted defense’s theory).
 

 We also conclude that Smithers did not establish that he was prejudiced by the alleged deficient performance. While it is true that the State argued to the jury that Cowan may have drowned, Smithers has not shown a reasonable probability that the sentence imposed would have been different had the defense presented an expert witness.
 

 The evidence does not undermine confidence in the sentencing court’s finding that the murder was especially heinous, atrocious, or cruel (HAC). In discussing HAC, the sentencing court stated that the evidence established that “the death of Cristy Cowan was caused by or involved blunt impact to her face and head, manual strangulation, and possible drowning.” However, the focus of the sentencing court’s analysis was that the “strangulation death of a conscious victim is in and of itself a crime which is heinous, atrocious, or cruel.” The testimony presented at the postconviction hearing supported, rather than contradicted, the finding that Cowan was strangled to death while conscious.
 

 The evidence also does not undermine confidence in the sentencing court’s finding that the CCP aggravating factor was applicable. In analyzing CCP, the sentencing court relied on the evidence that Smithers deliberately sought out Cowan and took her to the secluded property after he had already killed Roach. On appeal, this Court likewise relied on the events leading up to Cowan’s murder in finding CCP applicable. The postconviction evidence did not refute the evidence that Smithers
 
 *472
 
 picked up Cowan, took hex' to the propei’ty, and locked the gate behind them, after having recently killed Denise Roach.
 

 Because tidal counsel made a reasonable strategic decision not to call a defense expert and the evidence pi'esented at the evidentially hearing does not undermine confidence in the sentences, the postcon-viction court did not err in denying relief.
 

 III. PETITION FOR WRIT OF HABEAS CORPUS
 

 Smithers raises five claims in his petition for a writ of habeas corpus. He claims that (A) the rules prohibiting counsel from interviewing jurors are unconstitutional; (B) the jury was not adequately instructed, and counsel was ineffective for failing to litigate the sufficiency of the instructions; (C) Florida’s capital sentencing scheme was unconstitutional as applied, and counsel was ineffective for failing to litigate this issue; (D) cumulative errors deprived him of a fundamentally fair trial; and (E) he may be incompetent at the time of execution.
 

 With the exception of his cumulative error argument, each claim is procedurally barred because Smithers raised an identical claim in his motion for postconviction relief.
 
 See Blackwood v. State,
 
 946 So.2d 960, 976 (Fla.2006) (holding habeas claims procedurally barred where same claims were raised in defendant’s postconviction motion, summarily denied, and not appealed). In addition, as discussed below, each of Smithers’ habeas claims is without merit. Thus, we deny the petition.
 

 A. Juror Interviews
 

 Smithers argues that rule 4 — 3.5(d)(4) of the Rules Regulating the Florida Bar is unconstitutional. This Court has rejected similar challenges and has held rule 4-3.5(d)(4) to be constitutional.
 
 See, e.g., Power v. State,
 
 886 So.2d 952, 957 (Fla.2004) (holding that rule 4-3.5(d)(4) does not conflict with defendant’s constitutional rights to fair trial and effective assistance of counsel).
 

 B. Jury Instructions
 

 Next, Smithers argues that his jury was given inadequate instructions and that trial counsel was ineffective for failing to litigate the sufficiency of the instructions. The challenged instructions are virtually identical to Florida Standard Criminal Jury Instruction 7.11. This Court has repeatedly held that the standard instructions do not violate
 
 Caldwell v. Mississippi,
 
 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).
 
 See, e.g., Evans v. State,
 
 975 So.2d 1035, 1053 (Fla.2007). The Court also has held that Florida’s standard penalty-phase instructions do not unconstitutionally shift the burden of proof to the defendant,
 
 see Arango v. State,
 
 411 So.2d 172, 174 (Fla.1982), and that the standard instructions defining HAC and CCP are not unconstitutionally vague.
 
 See Donaldson v. State,
 
 722 So.2d 177, 186 n. 10 (Fla.1998) (holding standard HAC instruction not unconstitutionally vague and overbroad);
 
 Bowles v. State,
 
 804 So.2d 1173, 1177 (Fla.2001) (holding standard CCP jury instruction not unconstitutionally vague). Because each of Smithers’ substantive arguments about the jury instructions is without merit, trial counsel was not ineffective for not raising those arguments.
 
 See Evans,
 
 975 So.2d at 1043 (holding counsel not ineffective for failing to make meritless argument).
 

 To the extent that Smithers may assert that appellate counsel was ineffective for failing to litigate this issue, that claim is also procedurally barred and without merit. Claims of ineffective assistance of appellate counsel may not be used to camouflage issues that should have been presented on direct appeal.
 
 Rutherford v. Moore,
 
 774 So.2d 637, 643 (Fla.2000).
 
 *473
 
 Moreover, appellate counsel cannot be deemed ineffective for failing to raise a meritless argument.
 
 Id.
 

 C.Capital Sentencing Scheme
 

 Smithers argues that pursuant to
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), Florida’s capital sentencing scheme is unconstitutional as applied to him and that trial counsel was ineffective for not litigating this issue. A defendant is not entitled to relief on the basis of
 
 Ring
 
 where, as in this case, the prior violent felony conviction aggravating factor is present, and “counsel cannot be deemed ineffective for failing to make a meritless argument.”
 
 Evans,
 
 975 So.2d at 1043, 1052-53. To the extent that Smith-ers may assert that appellate counsel was ineffective for failing to litigate this issue, his argument is without merit. Appellate counsel cannot be deemed ineffective for failing to raise a meritless argument.
 
 See Rutherford,
 
 774 So.2d at 643.
 

 D.Cumulative Error
 

 Smithers argues that the cumulative effect of the substantive and procedural errors denied him a fair trial. This Court found no reversible error on direct appeal, and Smithers has not demonstrated through his postconviction motion and appeal or this petition that any additional error occurred that was not considered on direct appeal. Thus, he is not entitled to relief on the basis of cumulative error.
 
 See, e.g., Owen,
 
 986 So.2d at 556-57 (denying cumulative error claim where defendant did not show that any harmful error occurred).
 

 E.Competency at Time of Execution
 

 Finally, while acknowledging that a claim of incompetency at the time of execution is not ripe until a death warrant is issued, Smithers nevertheless argues that he may be incompetent at the time of his execution. We agree that this claim is premature. The claim is hereby denied without prejudice to raise the issue once a death warrant is signed.
 
 See Preston v. State,
 
 970 So.2d 789, 805 (Fla.2007).
 

 IV. CONCLUSION
 

 For the reasons stated above, we affirm the circuit court’s denial of Smithers’ motion for postconviction relief and deny his petition for a writ of habeas corpus.
 

 It is so ordered.
 

 QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, and LABARGA, JJ., concur.
 

 PERRY, J., did not participate.
 

 [1]
 

 . Smithers does not appeal the denial of his claims that trial counsel was ineffective due to his failure to present evidence that would have corroborated Smithers' trial testimony; failure to present evidence that Smithers’ confession was the product of psychological coercion; failure to object to the introduction of evidence of an uncharged crime and to prosecutorial comments about that uncharged crime; failure to argue that Smithers was not eligible for the death penalty because he was an ordained deacon; presentation of an expert witness that had not finished his evaluation of Smithers; and failure to request separate jury instructions on the aggravating factors that could apply to each victim. Smithers also does not appeal his claims raised in the postconviction court that the rules prohibiting defense counsel from interviewing jurors are unconstitutional; the jury was not adequately instructed, and counsel was ineffective for failing to litigate the sufficiency of the instructions; Florida's capital sentencing scheme was unconstitutional as applied, and counsel was ineffective for failing to litigate this issue; he may be incompetent at the time of execution; and cumulative errors deprived him of a fundamentally fair trial.
 

 [2]
 

 . To the extent that Smithers argues that trial counsel was ineffective for failing to question juror Collins about potential mitigation, his argument is procedurally barred and without merit. Smithers did not raise that argument before the postconviction court.
 
 See Green v. State,
 
 975 So.2d 1090, 1104 (Fla.2008). Moreover, in
 
 Green,
 
 this Court held that an allegation that further questioning would have established a basis for a cause challenge was "speculative” and not a basis for relief.
 
 Id.
 
 at 1105.
 

 [3]
 

 . During the evidentiary hearing, the defense introduced a report dated September 17, 1998, from investigator Diane Fernandez to Smithers' trial attorneys. The report stated that on September 11, 1998, Smithers informed his attorneys and Fernandez that he did not kill Roach and Cowan. Smithers explained that he was approached at his home by a white male driving a Bentley. Smithers explained that the man blackmailed Smithers into allowing him to use the White-hurst property to “conduct some business.” The report indicated that Smithers stated that he was speaking with Dean Snyder when the man arrived. At the evidentiary hearing, Snyder testified that he never saw a man get out of a Bentley while he was talking to Smithers, that he believed he would remember such an
 
 *468
 
 event, that he was not asked by the defense to testify at trial, and that he would have been willing to testify.
 

 [4]
 

 . During the hearing, Dr. Maher also testified briefly about Cowan’s cause of death. His testimony was cumulative to Dr. Hair’s trial testimony.