# Supreme Court of Florida

--------

No. SC2025-1507

--------

**SAMUEL L. SMITHERS,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

October 7, 2025

PER CURIAM.

Samuel L. Smithers, a prisoner under two sentences of death and an active death warrant, appeals the circuit court's summary denial of his successive motion to vacate his sentences of death. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. As we explain below, we affirm the summary denial of Smithers' postconviction motion.

## I. FACTS AND PROCEDURAL BACKGROUND

The opinion on direct appeal, *Smithers v. State*, 826 So. 2d 916, 918 (Fla. 2002), explained the following. In 1995, Samuel

Smithers agreed to maintain the lawn at a vacant 27-acre property in Plant City. The property was also the site of three ponds. The property owner gave Smithers a key to the gate that enclosed the property but not to the house located on the property.

Smithers continued to do lawn maintenance on the property in 1996. He mowed the lawn during the week of May 20, 1996, after which the owner paid him on May 26. A couple of days later, the owner went to check on the property. Upon arrival, the owner found Smithers' truck parked outside of the carport and Smithers sitting on the carport cleaning an axe. Smithers explained that he had returned to the property to cut some tree limbs, but the owner also noticed a pool of blood on the carport. Smithers suggested that someone must have killed a small animal, and he promised to clean the carport.

Concerned about the pool of blood, the owner contacted the Sheriff's Department and later met a deputy at the property. At that point, although the blood had been cleaned up, marks in the grass that appeared to be drag marks led to one of the ponds where a dead woman, later identified as Cristy Cowan, was found floating

in the water. Further searching by a dive team led to the discovery of another body, later identified to be Denise Roach.

DNA evidence linked to Smithers was found on the property inside of the house, and a blood stain found on the carport was consistent with Roach's DNA. Additional evidence linking Smithers to the murders was found during a search of his home, and surveillance video from a local convenience store showed Smithers and Cowan together about one hour before the owner arrived at the property and discovered Smithers.

After the discovery of the bodies, Smithers agreed to submit to an interview at the Sheriff's Department and was questioned for almost three hours. In an interview the next day, Smithers provided inconsistent statements and eventually admitted to the murders of Cowan and Roach. He was arrested and charged with both murders. Smithers filed motions to sever the two charges for purposes of trial and to suppress his confession, both of which were denied by the trial court.

The medical examiner's trial testimony indicated that both victims were strangled and sustained chop or stab wounds:

At trial, the medical examiner testified that at the time Cowan's body was discovered, she had not been dead for more than a couple of hours. There was a foam cone around her mouth which suggested that she might have drowned. Cowan had an injury to her eye, a laceration under her lip, a blunt impact injury to her jaw, a chop wound on the top of her head which penetrated her brain, and a chop wound behind her ear. She also had injuries consistent with manual strangulation. The medical examiner stated that death was caused by strangulation combined with the chop wounds.

Regarding Roach, the medical examiner testified that the body had been in the pond seven to ten days and was therefore very decomposed. There were two slits in Roach's clothing which were caused by a sharp instrument. Her face and skull were fractured. There were also sixteen puncture wounds to her skull, several of which penetrated the skull. Finally, she had injuries consistent with manual strangulation (the hyoid bone was fractured). The medical examiner stated that death was caused by the combined effects of strangulation, stab wounds, and blunt impact to the head.

*Id.* at 920.

Smithers testified in his defense at trial and told a different version of events than he provided to the detectives, this time placing the blame for both murders on an unknown man. The jury ultimately convicted Smithers of both counts of first-degree murder and, at the conclusion of the penalty phase, the jury unanimously recommended death for both murders. *Id.* at 921-22. As to the murder of Cowan, the trial court found the following aggravating

- 4 -

factors: (1) prior violent felony (the contemporaneous murder of Roach), (2) the murder was especially heinous, atrocious, or cruel (HAC), and (3) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP). The trial court found two aggravating factors as to the murder of Roach: (1) prior violent felony (the contemporaneous murder of Cowan) and (2) HAC.[1]  *Id.* at 922.  The circuit court, concluding the aggravating factors outweighed the mitigating circumstances, sentenced Smithers to death for both murders.

Smithers' convictions and sentences were affirmed on direct appeal.[2]  *Id.* at 931.  His convictions and sentences became final

---

1.  As statutory mitigation, the trial court found that (1) the murder was committed while Smithers was under the influence of extreme mental or emotional disturbance (moderate weight), and (2) Smithers' capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law was substantially impaired (moderate weight).  The trial court also found seven nonstatutory mitigators, each of which was assigned moderate weight, and the court gave great weight to a request made by Cowan's father that Smithers be sentenced to life imprisonment.  *Id.* at 922.

2.  This Court rejected six issues raised by Smithers on direct appeal: (1) the trial court erred in denying Smithers' motion to sever the two murder offenses; (2) the trial court erred in denying

- 5 -

when the United States Supreme Court denied certiorari review on February 24, 2003. *Smithers v. Florida*, 537 U.S. 1203 (2003).

This Court affirmed the denial of Smithers' initial motion for postconviction relief and denied his petition for writ of habeas corpus. *Smithers v. State*, 18 So. 3d 460, 463-73 (Fla. 2009).[3]

In 2017, Smithers filed a successive motion for postconviction relief based on the United States Supreme Court's decision in *Hurst*

---

Smithers' motion to suppress his confession; (3) the waiver of Smithers' presence at a pretrial hearing constituted fundamental error; (4) the trial court erred in finding HAC as to the murder of Roach; (5) the trial court erred in finding CCP as to the murder of Cowan; and (6) the trial court erred in denying defense counsel's motion for mistrial following an improper statement by a trial witness. *Id.* at 922 n.3.

3. In Smithers' initial postconviction appeal, he argued that counsel was ineffective for failing to (1) strike a prospective juror for cause; (2) seek exclusion of a portion of Smithers' statement to law enforcement; (3) adequately investigate mental health mitigation; and (4) call an independent medical examiner as a defense expert. *Id.* at 463.
Smithers raised five claims in his habeas petition: (1) the constitutionality of rules prohibiting counsel from interviewing jurors; (2) the jury was not adequately instructed on and counsel was ineffective for failing to litigate the sufficiency of the jury instructions; (3) Florida's capital sentencing scheme was unconstitutional as applied, and counsel was ineffective for failing to litigate the issue; (4) cumulative error; and (5) Smithers may be incompetent at the time of execution. *Id.* at 472-73.

*v. Florida*, 577 U.S. 92 (2016), and this Court's decision on remand in *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *receded from in part by State v. Poole*, 297 So. 3d 487 (Fla. 2020). The circuit court denied the motion, and this Court affirmed the circuit court's denial of relief. *Smithers v. State*, 244 So. 3d 152, 153 (Fla. 2018).

Smithers filed a federal habeas petition raising multiple issues. *Smithers v. Sec'y, Dep't of Corr.*, No. 8:09-cv-2200-T-17EAJ, 2011 WL 2446576 (M.D. Fla. June 15, 2011).[4] The district court denied each of Smithers' claims and denied a certificate of appealability. Subsequently, the United States Court of Appeals for the Eleventh Circuit granted a limited certificate of appealability on the matter of penalty phase ineffective assistance of counsel. *Smithers v. Sec'y, Fla. Dep't of Corr.*, 501 F. App'x 906 (11th Cir.

---

4. Smithers' federal habeas petition raised the following issues: (1) erroneous denial of motion to sever; (2) erroneous denial of motion to suppress; (3) Smithers' improper absence from pretrial hearing; (4) HAC challenge; (5) CCP challenge; (6) erroneous denial of motion for mistrial; (7) guilt phase ineffective assistance of counsel; (8) penalty phase ineffective assistance of counsel; (9) challenge to validity of rules regarding juror interviews; (10) erroneous penalty phase jury instructions; (11) challenge to the constitutionality of Florida's death penalty scheme; (12) cumulative error; and (13) Smithers' competency to be executed. *Id.* at *11-51.

2012).  The court considered two issues (failure to provide mental health expert with adequate background information and failure to consult independent expert to refute testimony of the medical examiner) and ultimately affirmed the denial of habeas relief.  *Id.* at 909.  The United States Supreme Court denied certiorari review. *Smithers v. Crews*, 569 U.S. 935 (2013).

Governor Ron DeSantis signed Smithers' death warrant on September 12, 2025.  On September 19, 2025, Smithers filed his successive motion to vacate his sentences of death pursuant to Florida Rule of Criminal Procedure 3.851.  The motion raised one claim, that at 72 years of age, his execution would constitute "cruel and unusual punishment because of his advanced age and status as elderly."  The circuit court conducted a *Huff*[5] hearing on September 22, 2025, and summarily denied relief in an order dated September 26, 2025.

Smithers timely appealed to this Court the denial of postconviction relief.  Here, his primary argument is that his execution constitutes cruel and unusual punishment because of his

_____

5.  *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

advanced age and status as elderly, and he discusses four sub-issues: (1) the circuit court erroneously denied the motion as untimely and procedurally barred; (2) the circuit court erred in concluding that the conformity clause and binding precedent foreclose relief; (3) executing the elderly is inconsistent with our evolving standards of decency; and (4) executing the elderly violates federal and state constitutional prohibitions against cruel and unusual punishment because such executions do not have a deterrent or a retributive purpose.[6] However, we need not reach the latter two sub-issues because sub-issues (1) and (2) are determinative of Smithers' appeal. We agree with the circuit court's conclusions that (1) Smithers' claim is untimely and procedurally barred, and (2) Smithers' claim is foreclosed by Florida's conformity

---

6. Smithers argues that executing him runs afoul of evolving standards of decency that are relevant to an Eighth Amendment analysis. To that end, he argues that the majority of states (including Florida) have never executed a person 70 years of age or older, and he points to Florida statutes that reflect a policy of protecting the elderly. He also maintains that his execution, as an elderly person who has served more than 26 years in prison, neither serves as a deterrent nor has a retributive purpose. He argues that the State's interest in punishing him is satisfied by his continued incarceration.

clause. Thus, we affirm the circuit court's order summarily denying Smithers' successive motion seeking to vacate his sentences of death.

## II. ANALYSIS

Smithers has claimed neither intellectual disability nor incompetency to be executed as bars to his execution. Rather, he argues that because of his advanced age of 72 years, executing him would constitute cruel and unusual punishment.

As is the case here, the "[s]ummary denial of a successive postconviction motion is appropriate '[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief.'" *Owen v. State*, 364 So. 3d 1017, 1022 (Fla. 2023) (second alteration in original) (quoting *Bogle v. State*, 322 So. 3d 44, 46 (Fla. 2021)). We review the circuit court's decision de novo, "accepting the movant's factual allegations as true to the extent they are not refuted by the record, and affirming the ruling if the record conclusively shows that the movant is entitled to no relief." *Id.* at 1022-23 (quoting *Walton v. State*, 3 So. 3d 1000, 1005 (Fla. 2009)). The circuit court did not err in summarily denying Smithers' claim.

## 1. Whether Smithers' Claim Is Untimely and Procedurally Barred

The circuit court correctly concluded that Smithers'

postconviction claim is untimely and procedurally barred.  Under

rule 3.851(d)(1), "[a]ny motion to vacate judgment of conviction and

sentence of death must be filed by the defendant within 1 year after

the judgment and sentence become final."  Fla. R. Crim. P.

3.851(d)(1).  Rule 3.851(d)(2) provides three exceptions to raising

postconviction claims outside of the one-year timeframe:

> (A) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, or
>
> (B) the fundamental constitutional right asserted was not established within the period provided for in subdivision (d)(1) and has been held to apply retroactively, or
>
> (C) postconviction counsel, through neglect, failed to file the motion.

Fla. R. Crim. P. 3.851(d)(2)(A)-(C).

Smithers does not argue, nor do we conclude, that any of

these exceptions apply to his postconviction claim.  Instead, he

argues that his postconviction claim only became ripe once the

- 11 -

Governor signed his death warrant on September 12, 2025.  We reject this argument.  As the circuit court concluded:

> Defendant's assertion that his claim is predicated upon his current age, and therefore could not have been previously raised and only became ripe after the signing of the death warrant, is unavailing.  Defendant essentially seeks a categorial [sic] exemption to execution for the elderly, which he defines as those individuals age sixty-five years or older.  By that definition, his claim became ripe when he turned sixty-five; therefore, he could have or should have raised his claim in prior proceedings rather than waiting until after the signing of his death warrant.

Smithers' argument that his claim is "predicated upon facts that only exist or become relevant upon the signing of a death warrant" is without merit.  While Smithers is correct that he could not have known exactly when his death warrant would be signed, he has known for several years that upon the signing of his death warrant and the exhaustion of any related successive postconviction process, he would fall within the class of individuals that he now seeks to exempt from execution due to advanced age.  Thus, his claim is untimely and fails to meet any exception provided in rule 3.851(d)(2).  We affirm the circuit court's ruling.

## 2. Whether Smithers' Claim Is Precluded by Florida's Conformity Clause

Smithers argues that this Court should break new ground in concluding that his execution, at 72 years of age, would constitute cruel and unusual punishment in violation of the Eighth Amendment and Florida's corresponding constitutional provision, article I, section 17. No opinion of the United States Supreme Court or this Court has held that the elderly are categorically exempt from execution. Even if Smithers' claim was not untimely or procedurally barred, we decline to extend the relief requested.

Presently, the United States Supreme Court—and this Court— recognize only one age-based death penalty exemption, which prohibits the imposition of the death penalty on individuals who were under the chronological age of 18 at the time that their capital crimes were committed. *See Roper v. Simmons*, 543 U.S. 551, 578 (2005).

Indeed, we recently stated:

> *Because the Supreme Court has interpreted the Eighth Amendment to limit the exemption from execution . . . based on age to those whose chronological age was less than eighteen years at the time of their capital crime(s), this Court is bound by those interpretations* and is precluded from interpreting Florida's prohibition against

cruel and unusual punishment to exempt . . . *those whose chronological age was over eighteen years at the time of their capital crime(s).*

*Gudinas v. State*, 412 So. 3d 701, 713 (Fla.) (emphasis added), *cert. denied*, 145 S. Ct. 2833 (2025).  Thus, to the extent we view Smithers' argument as precluded by United States Supreme Court precedent, we are bound by the conformity clause.[7]  As we have explained:

> This means that the Supreme Court's interpretation of the Eighth Amendment is both the floor and the ceiling for protection from cruel and unusual punishment in Florida, and this Court cannot interpret Florida's prohibition against cruel and unusual punishment to provide protection that the Supreme Court has decided is not afforded by the Eighth Amendment.

*Ford v. State*, 402 So. 3d 973, 979 (Fla.) (quoting *Barwick v. State*, 361 So. 3d 785, 794 (Fla. 2023)), *cert. denied*, 145 S. Ct. 1161 (2025).

For his part, Smithers argues that his case is distinguishable because the United States Supreme Court has not expressly

---

7.  "The prohibition against cruel or unusual punishment, and the prohibition against cruel and unusual punishment, shall be construed in conformity with decisions of the United States Supreme Court which interpret the prohibition against cruel and unusual punishment provided in the Eighth Amendment to the United States Constitution."  Art. I, § 17, Fla. Const.

addressed whether the elderly are exempt from execution and maintains that as such, this Court may expand Eighth Amendment protections to the execution of the elderly. However, we further observed in *Gudinas*:

> While the states are required to adhere to the Supreme Court's Eighth Amendment jurisprudence, *neither the Eighth nor Fourteenth Amendments require states to expand the protections afforded by the Eighth Amendment or to interpret their own corresponding state constitutional prohibitions against cruel and unusual punishment in a more expansive manner than the Supreme Court has interpreted the federal prohibition.*

412 So. 3d at 714 (emphasis added). Consistent with our analysis in *Gudinas*, we reject Smithers' invitation to expand the prohibition against cruel and unusual punishment to include individuals 65 years of age and older, and we affirm the circuit court's denial of relief.

### III. CONCLUSION

For these reasons, we affirm the denial of Smithers' successive motion to vacate his sentences of death.

No oral argument is necessary, no motion for rehearing will be entertained by this Court, and the mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., concurs in result.
CANADY, J., recused.

An Appeal from the Circuit Court in and for Hillsborough County, Michelle Sisco, Judge – Case No. 291996CF008093000AHC

Eric Pinkard, Capital Collateral Regional Counsel, Melody Jacquay-Acosta, Assistant Capital Collateral Regional Counsel, Ann Marie Mirialakis, Assistant Capital Collateral Regional Counsel, and Mahham Syed, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant

James Uthmeier, Attorney General, Tallahassee, Florida, Rick A. Buchwalter, Senior Assistant Attorney General, and Joshua E. Schow, Assistant Attorney General, Tampa, Florida,

    for Appellee